*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0410p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

HAMBALI AMIR,

*Petitioner,*

*v.*

No. 04-3538

ALBERTO GONZALES, Attorney General,

*Respondent.*

On Petition for Review of an Order
of the Board of Immigration Appeals.
No. A95 886 453.

Submitted: September 6, 2006

Decided and Filed: November 2, 2006

Before: MERRITT and MOORE, Circuit Judges; COLLIER, Chief District Judge.[*]

_____

### COUNSEL

**ON BRIEF:** Jaime G. Monteclaro, THE LAW OFFICES OF JAIME G. MONTECLARO, Artesia, California, for Petitioner. Deborah A. Solove, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Respondent.

_____

### OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Petitioner Hambali Amir ("Amir") petitions for review of an order by the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") decision to deny Amir's claims for asylum and withholding of removal under both the Immigration and Nationality Act ("INA") and under Article 3 of the United Nations Convention Against Torture ("CAT"). Although we DENY the petition for review of the BIA's decision with respect to Amir's INA-based claims for asylum and withholding of removal, the IJ's reliance on a BIA decision which is manifestly contrary to law requires us to **VACATE** the judgment of the BIA with respect to Amir's CAT claim and **REMAND** for further proceedings.

---

[*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

## I. BACKGROUND

Amir was born to a Muslim family in Indonesia. In January 1998, Amir moved from Sumatra to Surabaya, where he met Hendrik Wijaya ("Wijaya"), a Christian. After living with and working for Wijaya and his family, Amir decided to convert to Christianity and was baptized in July 2000.

Amir testified that three incidents occurred resulting in his decision to leave Indonesia. First, he testified that the church that he attended was fire bombed by Muslim "extremists" in December 1999. R. at 132 (Hr'g Tr. at 24). In June 2000, when Wijaya and his family returned from church, Amir, who had stayed home that day, saw "markings on [Wijaya's] face and [Wijaya's] car was broken." R. at 134 (Hr'g Tr. at 26). According to Amir, Wijaya told him that Muslims "came up [] against him." *Id.* Finally, in July 2000, Amir and Wijaya were in another church's parking lot when, according to Amir, they were chased by Muslim men in white robes who were riding motorcycles and brandishing samurai swords. Amir testified that these men threatened Amir about his church attendance, told Wijaya not to take Amir to church, and chased, hit, kicked, and punched Amir and Wijaya. Amir claims that the men on motorcycles left before local security arrived, and no police report was filed.

Amir and Wijaya came to the United States in August 2000. Amir filed an asylum application in June 2002. Amir's I-589 contained information which Amir later testified was false. His I-589 stated that he had been arrested in Indonesia, that he faced a hearing there for defaming Islam, and that he came to the United States to escape the impending hearing in Indonesia. However, when questioned about this during his hearing before the IJ, Amir denied that any of those statements made on the application were accurate. He claimed that there were several drafts of the application and that this particular version was not meant to be filed. Amir testified that as he and Wijaya filled out the application, "[w]e were thinking about the worst that we can think of or the worst of, of what was the truth and we discussed it and said never mind the truth."[1] R. at 159 (Hr'g Tr. at 51).

Amir testified that he is afraid that, if returned to Indonesia, he will be killed by fanatical Muslims, because Amir was a Muslim who converted to Christianity. He stated that under Muslim law, the penalty for conversion to Christianity is death. However, he acknowledged, and information in the record confirms, that Indonesia follows secular laws guaranteeing religious freedom.

On August 6, 2002, the Immigration and Naturalization Service sent Amir a Notice to Appear for overstaying his visa. In his hearing before the IJ on December 16, 2002, Amir requested asylum, or, in the alternative, withholding of removal under the INA and the CAT. The IJ denied Amir the requested relief, except for his request for voluntary departure. The IJ found that Amir had failed to file his asylum application by the one-year deadline. He also found that Amir was not credible, had not shown that he would be persecuted if returned to Indonesia, and did not meet the legal requirements for relief under the CAT. On March 31, 2004, the BIA affirmed and adopted the IJ decision and order. This appeal followed.

"Where the BIA adopts the IJ's reasoning, the court reviews the IJ's decision directly to determine whether the decision of the BIA should be upheld on appeal." *Gilaj v. Gonzales*, 408 F.3d 275, 282-83 (6th Cir. 2005). In this case, the BIA's opinion adopted the IJ's decision, and thus, we review the IJ's decision.

---

[1]We note with disapproval the fact that the Joint Appendix only includes the first page of the I-589 that was filed by Amir. The omission of the rest of this application from the Joint Appendix is misleading, in that this is the application where Amir makes the false declarations that he later recanted at his hearing.

## II.  ASYLUM CLAIM

Petitions for asylum must be filed within one year of the alien's arrival in the United States. 8 U.S.C. § 1158(a)(2)(B).  The BIA may consider an untimely application if the applicant demonstrates either changed country conditions or extraordinary circumstances related to the delay. 8 U.S.C. § 1158(a)(2)(D).  We are barred from "review[ing] [] asylum applications denied for untimeliness only when the appeal seeks review of discretionary or factual questions, but not when the appeal seeks review of constitutional claims or matters of statutory construction." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006).  In *Almuhtaseb*, we concluded that we did not have jurisdiction over the petitioner's claim of "changed circumstances," because it involved "a predominately factual determination."  *Id*. at 748-49.[2]

On appeal, Amir cursorily argues that "[t]he IJ abused its discretion in not receiving further evidence regarding such extraordinary or changed circumstances by prematurely pretermitting Mr. Amir's asylum application."  Amir Br. at 11.  In this case, the question of whether to admit or not admit evidence is not a constitutional question nor one involving statutory construction.  Thus, we do not have jurisdiction to review Amir's asylum claim.[3]

### III.  WITHHOLDING OF REMOVAL CLAIMS

#### A.  Standard of Review

We apply the same standard of review for withholding of removal claims made under the INA and the CAT.  In reviewing the BIA's decision on a request for withholding of removal under the INA, we reverse only when the BIA's decision against withholding is "manifestly contrary to law." *Almuhtaseb*, 453 F.3d at 749 (quoting 8 U.S.C. § 1252(b)(4)(C)).  "To reverse the BIA's determination, we must find that the evidence 'not only supports a contrary conclusion, but indeed *compels* it.'"  *Id*. (quoting *Yu v. Ashcroft,* 364 F.3d 700, 702-03 (6th Cir.2004)).  "[F]actual findings of the IJ are reviewed under the substantial-evidence standard, and we will not reverse those findings 'unless any reasonable adjudicator would be compelled to conclude to the contrary.'"  *Singh v. Gonzales*, 451 F.3d 400, 403 (6th Cir. 2006) (quoting 8 U.S.C. § 1252(b)(4)(B)).

#### B.  Withholding of Removal Under the INA

Amir was denied withholding of removal under 8 U.S.C. § 1231(b)(3):

> To prevail on a petition for withholding of removal under the INA, an alien must show that there is a "clear probability," that is, that "it is more likely than not," that []he would be subject to persecution on the basis of one of [] five grounds [race, religion, nationality, membership in a particular social group, or political opinion] were []he removed from this country.

*Almuhtaseb*, 453 F.3d at 749 (internal quotation marks omitted) (quoting *Liti v. Gonzales*, 411 F.3d 631, 640-41 (6th Cir. 2005)).  In denying Amir's petition for withholding of removal under the INA, the IJ determined that Amir lacked credibility, but even if believed, Amir was not entitled to

---

[2]In *Almuhtaseb*, we explained that not all changed circumstances cases are necessarily "predominately factual" and "another petitioner might present legal or constitutional issues regarding a changed-circumstances claim that would be within our jurisdiction to consider."  453 F.3d at 748 n.3.  This case, however, does not present such issues.

[3]We note that even if we did have jurisdiction, Amir's argument is incomprehensible.  All of the evidence offered by Amir at his hearing was accepted by the IJ, including evidence offered past the deadline for submitting evidence.

withholding of removal, because he failed to demonstrate that he would be persecuted if he were to return to Indonesia.

### 1. Credibility

"Credibility determinations are considered findings of fact, and are reviewed under the substantial[-]evidence standard." *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). "When an IJ determines that an alien's testimony lacks credibility, the IJ must include in his or her decision 'specific reasons' explaining why the IJ reached such a conclusion." *Singh v. Ashcroft*, 398 F.3d 396, 402 (6th Cir. 2005) (quoting *Sylla*, 388 F.3d at 926). The "'adverse credibility finding must be based on issues that go to the heart of the applicant's claim.'"[4] *Id.* (quoting *Sylla*, 388 F.3d at 926).

In determining that Amir was not credible, the IJ considered and compared Amir's testimony with the statements made in Amir's I-589, and found several inconsistencies. Specifically, the IJ found that:

> Amir state[d] in his application for asylum that he was arrested, but testified that he was not. He stated in his I-589 that he was held for defaming Islam and he testified that he was not. He state[d] in his I-589 [that] he came [to the United States] . . . because he feared this trial . . . but he testified that that was not the main reason. There is nothing in [] Amir's I-589 about the incident of July 2000 in the church parking lot.

J.A. at 50-51 (IJ Order at 14-15). The IJ was "unpersuaded by [] Amir's explanation that th[e] application for asylum set forth what might happen or what ha[s] happened to somebody or what happened to a friend or something not relating to . . . Amir[] in this application," and that Amir did not mean to send the application that was filed. *Id*. at 51 (IJ Order at 15). The IJ concluded that "given the mish-mash of testimony offered and the confusing sequence of events and some things that were omitted and some things that were meant to be said and some things that might have happened, [there is] grave doubt about [Amir's] credibility . . . ." J.A. at 52 (IJ Order at 16).

The IJ examined the conflicting evidence provided by Amir, determined that it indicated a lack of credibility, and denied Amir's application for withholding of removal. These conflicts were significant and went to the heart of Amir's claims of persecution. Any reasonable adjudicator would not be compelled to reach a contrary conclusion from the one reached here, and thus, the IJ's credibility finding was supported by substantial evidence.

### 2. Failure to demonstrate persecution if returned to Indonesia

The IJ concluded that regardless of credibility, Amir had failed to meet his burden in showing that there was a "clear probability" that he would be subject to persecution on the basis of his religion if he was removed to Indonesia. The IJ, citing *In re Y-B-*, 21 I. & N. Dec. 1136 (1998), explained that "the weaker an applicant's testimony, the greater the need for corroborative evidence." J.A. at 53 (IJ Order at 17). *See also Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004) ("Because [the petitioner's] testimony plausibly could be viewed as incredible, and certainly could

---

[4]The REAL ID Act of 2005, Pub. L. 109-13, 119 Stat. 231 (codified in scattered sections of 8 U.S.C.), changed the standard governing credibility determinations, stating that those determinations may be made "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). This provision, however, only applies to aliens who applied for asylum, withholding of removal, or other relief on or after May 11, 2005, the effective date of this division of the Act. Pub. L. 109-13, div. B, § 101(h)(2), 119 Stat. 231 at 305. As Amir applied for relief in June 2002, this provision of the REAL ID Act does not apply to our review of his claims.

be viewed as inconsistent or incoherent, a fact finder reasonably could find that [the petitioner's] testimony, absent corroboration, was insufficient to meet his burden of proof."). The IJ noted the "gaps in documentary evidence," specifically, the lack of Indonesian baptismal documents or documents regarding Amir's alleged participation in church in the United States. J.A. at 52-53 (IJ Order at 16-17). The IJ found that the documentation provided was insufficient to meet Amir's burden.

In addition to the lack of documentary evidence, the IJ also found "that there are Christian majority areas and enclaves in the vastness of the Indonesian archipelago." *Id*. at 53 (IJ Order at 17). Thus, "there are parts of Indonesia where [Amir] could live in safety and [Amir] ha[s] not met [his] burden of proving that the fear [he] ha[s] is nation-wide." *Id*. Finally, the IJ found that Amir had failed to substantiate his contention that he would be put to death because of his conversion to Christianity, and that the Indonesian government is unable or unwilling to protect him. Amir presented no evidence that a Muslim convert to Christianity had been killed by Muslims,[5] but only testified that there are Muslim teachings stating death is the proper punishment for converts.

The IJ's determination that Amir failed to show that there was a clear probability that, if removed, he would be subject to persecution on the basis of his religion was not manifestly contrary to law. In light of the dearth of evidence provided by Amir, we are not compelled to reach a conclusion contrary to the one reached by the IJ.

## C. Withholding of Removal Under the CAT

In order to qualify for withholding of removal under the CAT, Amir "bears the burden of establishing [that] 'it is more likely than not that he [] would be tortured if removed to [Indonesia].'" *Liti*, 411 F.3d at 641 (quoting 8 C.F.R. § 1208.16(c)(2)). In determining whether future torture is possible, we look at all relevant evidence such as:

> (i) evidence of past torture inflicted on the applicant; (ii) evidence that the applicant could relocate to a part of the country where he is likely not to be tortured; (iii) evidence of gross, flagrant or mass violations of human rights within the country to which the applicant will be removed; and, (iv) other relevant information about the country to which the applicant will be removed.

*Namo v. Gonzales*, 401 F.3d 453, 457 (6th Cir. 2005). The definition of torture includes:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or *acquiescence* of a public official or other person acting in an official capacity.

*Singh*, 398 F.3d at 404-05 (quoting 8 C.F.R. § 208.18(a)(1)) (emphasis supplied). In *Ali v. Reno*, 237 F.3d 591 (6th Cir. 2001), we concluded that "willful blindness" fell within the definition of "acquiescence." *Id*. at 597 (citing S. Exec. Rep. No. 101-30, at 9 (1990)).

---

[5]To be clear, the U.S. State Department's International Religious Freedom Report 2002 for Indonesia, which is part of the record, does state that "[o]ngoing conflicts between Muslims and Christians [in Indonesia] resulted in the deaths of at least 125 persons . . . ." J.A. at 111. However, it says nothing about persons being killed because of converting to Christianity.

In the case at bar, the IJ applied *In Re S-V-*, 22 I. & N. Dec. 1306 (2000), to Amir's CAT claim. In *S-V*, the BIA held that a petitioner "must do more than show that the officials are aware of the activity but are powerless to stop it. He must demonstrate that . . . officials are *willfully accepting* of the guerillas' torturous activities." *Id*. at 1312 (emphasis supplied). Because Amir did not show that the Indonesian government was willfully accepting of the fanatical Muslim activity, the IJ dismissed the CAT claim without further analysis.

We join the Ninth and Second Circuits in holding that *In Re S-V-* directly conflicts with Congress's clear intent to include "willful blindness" in the definition of "acquiescence." *Zheng v. Ashcroft*, 332 F.3d 1186, 1188-89, 1194 (9th Cir. 2003) (submitting the *S-V-* decision to *Chevron* review and concluding that it "impermissibly narrows Congress' clear intent in implementing relief under the [CAT]."); *Ochoa v. Gonzales*, 406 F.3d 1166, 1172 (9th Cir. 2005) (acknowledging that in *Zheng* the Ninth Circuit overruled *S-V-*); *Khouzam v. Ashcroft*, 361 F.3d 161, 170-71 (2d Cir. 2004) (same as *Zheng*); *Perez v. Loy*, 356 F. Supp. 2d 172, 177-78 (D. Conn. 2005) (referring to *S-V-*'s definition of "acquiescence" as "an erroneous prior ruling"). Although we have not previously had occasion expressly to disapprove the standard for "acquiescence" set forth in *S-V-*, our holding in *Ali v. Reno* made clear that "willful blindness" falls within the definition of "acquiescence." *Ali*, 237 F.3d at 597. Today we explicitly hold that the IJ's reliance on *In Re S-V-* was manifestly contrary to the law.

Because "'[a] court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands,' and because '[t]his principle has obvious importance in the immigration context,'" we remand Amir's CAT claim to the BIA for a decision consistent with this opinion. *Pergega v. Gonzales*, 417 F.3d 623, 631 (6th Cir. 2005) (quoting *INS v. Orlando Ventura*, 537 U.S. 12, 16-17 (2002)).

## IV.  CONCLUSION

For the foregoing reasons, we DENY the petition for review of the BIA's decision insofar as it denies Amir's claims for asylum and withholding of removal under the INA. With respect to Amir's CAT claim, however, we **VACATE** the BIA's decision and **REMAND** for further proceedings.