NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0464n.06
Filed: June 29, 2007

06-3318

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DAN FLORIN BORTAS, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| | ) | OF AN ORDER OF THE BOARD |
| v. | ) | OF IMMIGRATION APPEALS |
| | ) | |
| ALBERTO GONZALES, United States | ) | |
| Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

Before: RYAN, DAUGHTREY, and ROGERS, Circuit Judges.

**PER CURIAM.** The petitioner, Dan Florin Bortas, seeks review of a final order of removal by the Board of Immigration Appeals (BIA) that affirmed the immigration judge's denial of Bortas's application for asylum and withholding of removal under the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a) and 1231(b)(3), and denial of relief under the United Nations Convention Against Torture, 8 C.F.R. §§ 1208.16(c) and 1208.18. Because the petitioner's asylum application was denied as untimely and because he does not raise a valid statutory or constitutional claim relating to this denial, we lack jurisdiction to review that portion of the BIA's order. Moreover, we conclude that the denial of his application for withholding of removal was supported by substantial evidence and, therefore, affirm the remainder of the order.

Petitioner Bortas is a Romanian national who illegally entered the United States through Mexico and was arrested by INS border patrol agents on February 22, 2000. Despite his claim that he was in detention for three weeks following arrest, the official records indicate that Bortas posted a $5,000 bond and was released from custody two days later, on February 24, 2000.[1] When the INS instituted removal proceedings against Bortas, his counsel indicated that he planned to file an asylum application. However, when the first hearing was convened in the immigration court on April 10, 2001, an application had not yet been filed. The attorney for the government pointed out, in response to the petitioner's request for a continuance, that Bortas had already missed the one-year deadline for filing an application for asylum. As a result, the immigration judge continued the proceedings and instructed Bortas's attorney to address the issue of timeliness in the application.

When the hearing resumed on September 25, 2001, and Bortas submitted his application for asylum, the immigration judge asked him to review it for accuracy before signing it. Bortas confirmed that he had been over his application "line by line and word for word" and that nothing needed to be changed; his attorney confirmed the same. In his application Bortas indicated that he had never before applied for refugee status, asylum, withholding of deportation, or withholding of removal and acknowledged that the application

---

[1]Bortas initially testified that he had notified immigration authorities immediately that he wished to seek asylum but later retreated from this assertion, saying in response to questioning from the immigration judge that he had not sought permission to stay in the country at that time.

was being filed more than a year after his arrival in the United States. He explained this delay by stating that he "thought that he had applied previously while detained." After reading this statement, the immigration judge asked whether Bortas had explained the reason for the delay in greater detail anywhere in the document. Bortas's attorney replied that he had not.

In his asylum application, Bortas indicated that he was persecuted as the result of his attempt to protect the workers in a state-owned mine in Romania, where he was employed as a geologist, from the effects of radiation emanating from mining operations. He reported being beaten up by security guards from the mine on three occasions, listing these incidents as occurring in December 1998, February 1999, and December 2000, even though the latter was an impossible date in view of Bortas's arrival in this country in February 2000. The application also reflected that after the third incident, Bortas left the mine area and moved to his mother's home in northeastern Romania. He further indicated in the application that the arrival of a threatening letter at that address led him to flee to Mexico and then, nine days later, to the United States.

A review of the petitioner's testimony at the April 2001 hearing reveals additional discrepancies. He said at that time, for example, that the Romanian mine where he had worked had closed in 1996 and that the attack listed in the application as happening in December 2000 had actually occurred three years earlier, in December 1997. Moreover, Bortas testified that he was physically attacked only two times, rather than the three

occasions set out in the written application. When the immigration judge inquired about this contradiction, Bortas replied that the third incident was merely a verbal attack, not a physical attack, in direct contradiction to the description in the application. Among other discrepancies, the petitioner testified that he had fled to his mother's home in 1997 and stayed there until he left Romania in 2000. Asked why he had waited so long to leave Romania, Bortas answered, "I tried to find work so I stayed."

The immigration judge rejected the asylum application as untimely, finding that Bortas had the opportunity to file a timely application but failed to do so. In his decision, the immigration judge also rejected Bortas's attempt to justify the delay by alleging that he thought he had filed an application while in detention, finding incredible Bortas's assertion that he was detained for three weeks and concluding that there was no proof "that he filed or believes that he filed an[] . . . application during his two days of incarceration."

The immigration judge found, in addition, that even if Bortas had filed a timely application for asylum, it would fail on the merits because Bortas's testimony was not credible. Finally, the judge found that Bortas was ineligible for withholding of removal, noting that even if he had been able to prove past persecution, he could not establish a reasonable fear of future persecution because "he ha[d] demonstrated, through his testimony . . . , that he could live with his mother in another part of Romania and not suffer any persecution."

- 4 -

On appeal to the BIA, Bortas contended that his right to due process had been violated, making what we find to be a completely spurious argument that the immigration judge was "clearly . . . biased towards Respondent and his claim for asylum." The BIA rejected Bortas's due process claim, finding that he "failed to cite instances of misconduct on the part of the Immigration Judge to support the notion that the decision was based on anything other than his understanding and knowledge of the applicable laws and regulations and what he adduced from his participation in the case." With regard to the underlying claims, the BIA affirmed the immigration judge's determination that the petitioner's application had not been timely filed and, further, that it did not qualify under one of the exceptions to the statutory time-bar. The BIA also affirmed the immigration judge's decision denying the petitioner's request for withholding of removal, noting that the discrepancies in Bortas's testimony thoroughly undermined his claim that he would be subjected to future persecution if sent back to Romania.

We find no legal basis upon which to overturn the BIA's decision. First, the petitioner's unsupported due process claim is simply insufficient to excuse the untimely filing of his petition for asylum, which, under 8 U.S.C. § 1158(a)(2)(B), had to be submitted within one year of his arrival in the United States. In Amir v. Gonzales, 467 F.3d 921 (6th Cir. 2006), we rejected a claim, similar to Bortas's, that the immigration court "abused its discretion in not receiving further evidence" because "the question of whether to admit or not admit evidence is not a constitutional question nor one involving statutory construction." Id. at 924. Moreover, the specific evidence now claimed to have been improperly rejected

by the immigration judge as unreliable – an employment record proffered by Bortas that was conceded to be both improperly translated and unauthenticated – was not mentioned as part of the petitioner's contention before the BIA that the immigration judge was biased against him. We conclude that any error in the immigration judge's ruling was waived when it was not raised before the BIA. It certainly cannot be resurrected at this late date as a basis upon which to excuse the petitioner's violation of Section 1158(a)(2)(B). It follows that, under 8 U.S.C. § 1158(a)(3), we lack jurisdiction to review the BIA's determination of timeliness.

Second, the immigration judge's decision to deny withholding of removal based on his factual determination that Bortas was not credible is supported by substantial evidence, given the great number of material inconsistencies in and between the petitioner's written application for asylum and his testimony at the hearings in the immigration court. Indeed, the petitioner's lack of credibility alone is sufficient to support the denial of his request for withholding of removal, because the only evidence offered to establish his fear of future persecution was his own testimony. In addition, the immigration judge determined that Bortas could be safely relocated within Romania based on the petitioner's testimony that he had lived for three years without persecution at his mother's home. Bortas's argument that the threatening letter he received there established the likelihood of future persecution is undercut by the content of the letter, which threatened Bortas with harm only if he returned to his previous residence in a different area of Romania.

As for the petitioner's request for relief under the U.N. Convention, given the evidence concerning relocation within Romania outlined above, Bortas has obviously failed to "establish that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal."  8 C.F.R. § 1208.16(c)(2).

For these reasons, we DENY review of the final order of the Board of Immigration Appeals affirming the decision of the immigration judge to deny asylum and the withholding of removal in this case.