**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 08a0125n.06
Filed: February 29, 2008
No. 06-4436

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

PETAR MATIC AND JAGOD SPOLJARIC,
    *Petitioners*

                          On Petition for Review of a Decision of the
                          Board of Immigration Appeals

        v.

MICHAEL MUKASEY,
ATTORNEY GENERAL OF THE UNITED STATES,
    *Respondent*

_____/

**BEFORE: KENNEDY, MARTIN, and COLE, Circuit Judges.**

**KENNEDY, Circuit Judge.** Petitioners Petar Matic and Jagoda Spoljaric, husband and

wife, seek review of a final order of removal issued by the Board of Immigration Appeals ("BIA"),

adopting and affirming the Immigration Judge's ("IJ") denial of their claims for asylum, withholding

of removal, and withholding of removal under the Convention Against Torture ("CAT"). Because

we find that we do not have jurisdiction to review Petitioner's asylum or CAT claims and the

finding that Petitioners failed to establish their eligibility for withholding of removal is supported

by substantial evidence in the record, we **AFFIRM** the BIA's decision and **DENY** the petition for

review.

**BACKGROUND**

Petitioners Matic and Spoljaric, natives and citizens of Croatia, entered the United States as

nonimmigrant visitors for pleasure on December 24, 2001 with authorization to remain in the United

States until September 23, 2002. On February 28, 2003, each filed an Application for Asylum and Withholding of Removal. On April 11, 2003, the Department of Homeland Security ("DHS") served each petitioner with a Notice to Appear ("NTA"), charging them with being subject to removal for "remain[ing] in the United States for a time longer than permitted." 8 U.S.C. § 1227(a)(1)(B). Petitioners each admitted the allegations in their respective NTAs and conceded removability at a hearing before an IJ on August 13, 2003.

On January 27, 2005, the IJ conducted a merits hearing on Petitioners' asylum and withholding of removal applications. At the hearing, Petitioner Spoljaric explained that she had filed her asylum application in February 2003, more than a year after her arrival in the United States, because she had hoped that she would be able to stay in the United States by being granted a work visa; her visa application was denied in December 2002. She testified that she fears returning to Croatia because she believes that she will be persecuted on account of her Serbo-Croatian ethnicity. Petitioner Spoljaric testified about several incidents of employment discrimination because of her Serbian heritage: (1) she was scheduled to start work at a publishing house as an illustrator of children's books on January 1, 1998, but after the personnel department received her "autobiography with [her] schooling and [her] heritage," she was "told . . . as an excuse that Russian style in illustrating the school books . . . [is] not seen as proper" and she was not assigned any other projects; (2) she was forced to resign a month after beginning work at the firm Dekoteks after an administrator told her, "as a professional you are on a high level, . . . but due to unclean or not clean Croatian blood the clients of Dekoteks cannot tolerate . . . the reputation of the firm Dekoteks would be destroyed;" (3) she obtained a job as a designer at Face Cosmetics on October 16, 1998, and a month later her co-workers "started talking against [her] Serbian heritage" and she received threatening

2

notes; (4) she resigned from Face Cosmetics on January 30, 1999 after the administrator's assistant told her that "Serbs are not to work in Face and that it would be better for everybody if [she left] Face and especially it would be a lot better for [her];" (5) she was approached by an individual in the hallway of her employer, Magma, and threatened, "don't be in Croatia and in Magma[;] we do [sic] here with designers, they are Croatians but not Serbs[;] beware that there is a surprise coming to you;" and (6) her contract with Magma "was cancelled due to the fact that they did not have enough jobs or a need to do the work, . . . which was actually the big lie" – the director of Magma was politically active and was the "minister of economy of the Republic of Croatia" and it "was known through the newspapers and the media that [Magma] was letting go everybody that was Serb."

Petitioner Spoljaric also testified that she had been physically attacked and threatened by others because of her Serbian heritage. Petitioner Spoljaric alleged that an acquaintance with whom she had worked waited for her at her apartment, entered, and then told her that she was against Croatia because she is a "dirty Serbian," while physically attacking her by "slapping [her] over [her] head and over [her] neck. He then informed her that the "police is with us" and he would kill her if she reported the incident to the police. Petitioner Spoljaric testified that she did not report the incident to the police because she feared for her life and she believed that the police were working with the "extreme group." Petitioner Spoljaric also alleged that three young people jumped in front of her and a friend while they were walking down the street and said, "You Serbian garbage, it would be a lot better if you disappear from the firm, Face, because we will fix you in such a manner that nobody will recognize you." The three then pulled knives and started to advance toward them, but Petitioner Spoljaric and her friend managed to run away.

3

Finally, Petitioner Spoljaric testified that after she and her now husband, Petitioner Matic, began dating, they were verbally attacked by unknown people on the streets on a daily basis for their mixed heritage. She indicated that she decided to leave Croatia after April 2001, when she received an anonymous phone call during which the caller stated: "In Croatia we do not need people from sects and we do not need Serbs. And if you marry Petar we will kill you both and watch what you're doing because you're being followed."

At the merits hearing, Petitioner Matic stated that he fears returning to Croatia, a predominately Catholic nation, because he believes that he will be persecuted because he is an Evangelical Christian. Petitioner Matic testified about several incidents he alleges he suffered because of his religious beliefs: (1) he traveled from town to town in 1990, providing food, money, and religious relief, as a member of a Christian humanitarian group and "all kinds of people" verbally attacked him and tried to physically stop him and others in his humanitarian group; (2) after he was arrested and taken to the police station in August 1992 for failure to show police the documents he was required to carry under Croatian law, he was interrogated and instructed to kneel at gunpoint after telling the inspector that he was not on the front lines of war because of his "heavy Christian belie[fs];" (3) although he reported this incident to the Ministry of Interior the next day, he never received an apology or an explanation for what happened at the police station; (4) in 1994, a Catholic priest, along with "a bunch of bodyguards," pushed him and other Protestants out of a restaurant from which they were donating food, while screaming, "[Protestants] should be taken out of Croatian society right from the roots," and threatening to report them to the Croatian government and the Catholic church; (5) the church he attended often had to change the places of its meetings and prayer because of this kind of hostility; and (6) he was called to attend an informational session

4

at the police station in December 1999, where he was asked his place of birth and religion and they confiscated his passport. Petitioner Matic alleged that he suffered a mental breakdown on March 31, 2001 "because of all these things [that] were happening to [him] and all of the[ ] pressures." He stated that the doctors gave him medicine, but he was not admitted to the hospital because he did not have medical insurance. Petitioner Matic stated that after he and Petitioner Spoljaric began receiving threatening phone calls, he resolved to leave Croatia "at the first moment . . . feasible" for them to "safely leave."

The IJ issued an oral decision at the conclusion of the merits hearing on January 27, 2005, denying Petitioners' applications for asylum, withholding of removal, and relief under the CAT, and granting Petitioners voluntary departure. With respect to their applications for asylum, the IJ found that Petitioners had failed to timely file their applications within one year of their arrival in the United States as required by 8 U.S.C. § 1158(a)(2)(B). Additionally, the IJ found that Petitioners failed to demonstrate either changed circumstances or extraordinary circumstances to excuse their untimely filing.

With respect to their withholding of removal claims, the IJ stated that Petitioners had embellished their claims, their testimony was not completely consistent with the statements in their asylum applications, and they had failed to offer sufficient corroborative evidence in support of their claims. Additionally, the IJ found, "even assuming either [Petitioner's] testimony was credible," they had not established a clear probability that they would be persecuted if returned to Croatia. The IJ found that Petitioner Spoljaric's employment problems amounted to private discrimination, not persecution. The IJ also found that while the record evidence indicates there are some problems with religious groups in Croatia, Petitioner Matic had failed to show that the government is systematically

5

persecuting Protestant groups or that the government had interfered with the practice of his religion. Furthermore, the IJ determined that Petitioner Matic's arrest in 1992 was because of his failure to have identification, not because of his Protestant faith, and his subsequent brief detention in 1999 was a result of this police record. The IJ noted that he was released and able to recover his passport through legal means.

With respect to Petitioners' CAT claims, the IJ held that Petitioners had failed to establish that it is more likely than not that they would be tortured by, or with the consent or acquiescence of, the government of Croatia if they return to Croatia.

Petitioners timely appealed the IJ's decision on December 10, 2004. On August 31, 2006, the BIA dismissed Petitioners' appeal and affirmed the IJ's decision. The BIA reissued its decision on October 5, 2006 due to a defect in service. Petitioners filed a petition for review with this Court on November 1, 2006.

## ANALYSIS

Where the BIA indicates its agreement with the IJ's decision and also provides some comments of its own, as it did here, we review both the BIA's decision and the IJ's decision. *Mapouya v. Gonzales*, 487 F.3d 396, 405 (6th Cir. 2007). Under our standard of review, we must uphold the decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). To overturn an administrative determination under this highly deferential standard, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Id.* at 481 n. 1.

## I. Request for Asylum

6

An alien is precluded from applying for asylum unless she "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). The exceptions to the one year requirement permit an application to be considered if the alien demonstrates the existence of either changed circumstances which materially affect her eligibility for asylum or extraordinary circumstances relating to her delay in filing the application. 8 U.S.C. § 1158(a)(2)(D). "Extraordinary circumstances" may excuse the failure to file within one year "as long as the alien filed the application within a reasonable period given those circumstances." 8 C.F.R. § 208.4(a)(5). The burden of proof is on the alien to establish to the satisfaction of the IJ or the BIA that "the circumstances were not intentionally created through his or her own action or inaction, that those circumstances were directly related to the alien's failure to file the application within the 1-year period, and that the delay was reasonable under the circumstances." *Id*.

We lack jurisdiction to review the IJ and BIA's decision that an alien is not eligible for asylum on the basis of 8 U.S.C. §§ 1158(a)(2)(B) & (D), unless the alien has raised a constitutional claim or a question of statutory construction. 8 U.S.C. § 1158(a)(3); *Almuhtaseb v. Gonzales*, 453 F.3d 743, 746-48 (6th Cir. 2006) (holding, after enactment of the REAL ID Act, that while the Court lacks jurisdiction to review discretionary and factual questions relating to the untimely filing of an asylum application, the Court has jurisdiction, under 8 U.S.C. § 1252(a)(2)(D), to review constitutional claims and matters of statutory construction related to the untimely filing if an alien raises such issues).

Petitioners argue that we have jurisdiction to review the IJ and BIA's determination that they are not eligible for asylum because of their failure to file an application within one year of the date

7

of their arrival in the United States because they raise a constitutional claim relating to the untimely filing. Petitioners attempt to raise a constitutional claim by arguing that the IJ and BIA violated due process by failing to engage in a case-by-case reasonableness analysis for a delay period shorter than six months, as required by agency regulations. *See* 65 Fed. Reg. 76123-76124 (Dec. 6, 2000) ("[W]aiting [to apply for asylum] six months or longer after expiration or termination of status would not be considered reasonable. Shorter periods of time would be considered on a case-by-case basis, with the decision-maker taking into account the totality of the circumstances."). We find, however, that the IJ and BIA did engage in a case-by-case analysis and concluded that waiting five months after their lawful nonimmigrant status expired to file their asylum applications was an unreasonable period, despite Petitioners' contention that they waited because they hoped that Petitioner Spoljaric's visa petition would be approved. Petitioners' purported due process claim is simply an attempt to challenge the IJ and BIA's discretionary determination that filing a visa petition is not a valid reason for delaying the filing of an asylum application after lawful status has expired and does not constitute excusable extraordinary circumstances. Therefore, because Petitioners have not raised a constitutional question or matter of statutory construction, we must dismiss the petition for review on their asylum claims for lack of appellate jurisdiction.

## II. Request for Relief Under the Convention Against Torture

Petitioners also argue that the IJ erred in relying on *In Re S-V-*, 22 I. & N. Dec. 1306 (2000), for the standard of government "acquiescence" required to qualify for withholding of removal under the CAT when the alien alleges a likelihood of torture from non-governmental sources because of our recent decision in *Amir v. Gonzales*, 467 F.3d 921 (6th Cir. 2006). Petitioners, however, failed to exhaust their administrative remedies by raising such claims before the BIA in the first instance.

8

Therefore, we lack jurisdiction to review the denial of Petitioners' claims for withholding of removal under the CAT. *See* 8 U.S.C. § 1252(d).

### III. Request for Withholding of Removal

Finally, Petitioners seek review of the denial of their request for withholding of removal. To qualify for withholding of removal under 8 U.S.C. § 1231(b)(3), an applicant must establish a clear probability that he will be persecuted on account of a protected ground if forced to return to the country of removal. *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir.2004). An applicant must demonstrate that "it is more likely than not" that he will be persecuted upon return. 8 C.F.R. § 1208.16(b)(2). An applicant's testimony may be sufficient to establish eligibility for withholding of removal if it is "believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear." *Pilica*, 388 F.3d at 954.

In the present case, the IJ and BIA held that even if Petitioners were credible, they had not established that they had been persecuted in the past or that there is a clear probability that they would be subject to persecution if returned to Croatia. The IJ and BIA found that the employment discrimination, beatings by an acquaintance and unknown assailants, and anonymous threats Petitioner Spoljaric allegedly suffered on account of her ethnicity did not amount to persecution. Furthermore, because Petitioner Spoljaric did not file formal complaints or even report the incidents to the police, the IJ and BIA found that she could not demonstrate a clear probability of future persecution as she had failed to demonstrate that Croatia is unwilling or unable to protect her from the alleged non-governmental persecutors. The IJ also found that Petitioner Matic's claim that his religious group was denied access to public squares did not constitute persecution and his detention

by the police resulted from his failure to have proper ID documents in his possession at the time, not because of his religion or ethnicity.

Because the record evidence does not compel a finding that it is more likely than not that Petitioners' lives or freedom would be threatened on account of their ethnicity or religion if returned to Croatia, we uphold the IJ and BIA's denial of withholding of removal.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the BIA and **DENY** the petition for review.