NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0835n.06

No. 09-3915

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

GRACE MUTHONI MWATHI,

    Petitioner,

v.

ERIC H. HOLDER JR., Attorney General,

    Respondent.

_____/

**FILED**

*Dec 13, 2011*

LEONARD GREEN, Clerk

ON PETITION FOR REVIEW FROM
THE BOARD OF IMMIGRATION
APPEALS

BEFORE:    CLAY, GIBBONS, and WHITE, Circuit Judges.

    **CLAY, Circuit Judge.**  Petitioner Grace Muthoni Mwathi ("Mwathi") petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming the decision of the immigration judge ("IJ") denying her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). For the reasons stated below, Mwathi's petition for review is **DENIED**.

**BACKGROUND**

    Mwathi is a native citizen of Kenya. She applied for and was granted a non-immigrant visa to the United States in October 2001. On September 20, 2002, Mwathi entered the United States and has remained in the country since that time. She timely filed an application for asylum, withholding

of removal, and protection under CAT in 2003. In her application for relief, Mwathi claimed that she faced persecution on account of imputed political opinion because of her husband's well-known opposition to the Kenyan government.

On August 4, 2004, the Department of Homeland Security commenced removal proceedings against Mwathi under § 237(a)(1)(B) of the Immigration and Naturalization Act for overextending her visa, which had expired on March 19, 2003. Mwathi was requested to appear in Immigration Court on December 27, 2006, but she failed to appear. Mwathi was therefore ordered removed *in abstentia*. Mwathi then filed a motion to reopen the case. The court granted her motion on April 11, 2007.

On June 18, 2007, Mwathi appeared before the IJ and admitted to overstaying her non-immigrant visa and conceded removability. She also renewed her request for asylum, withholding of removal, CAT protection, and voluntary departure.

On December 12, 2007, the IJ conducted a merits hearing in Cleveland, Ohio. At the hearing, Mwathi testified that she is afraid to return to Kenya because she believes that she will "be a target of the government officials responsible for her husband's murder." Her husband, Dr. Mwathi, was murdered in April 1998 and his body was discovered near his car. Dr. Mwathi was a well-known surgeon for the army and formerly worked at a military hospital in Kenya until his age forced him to retire. During his time working at the military hospital and then later in private practice, Dr. Mwathi's patients, many of whom were prisoners, would discuss with him government corruption in the procurement of military or governmental medical supplies and also the abuse they received at the hands of the government.

Mwathi's testimony consisted of numerous incidents in which she was harassed and threatened by members of the Kenyan government beginning in 1996 until she left for the United States in 2002. Mwathi testified that sometime in 1996 or 1997, the family was awakened in their home during the night by intruders who threatened her family. The intruders left after Dr. Mwathi fired a gun shot into the air to scare them away.

She also recalled that her husband started to receive letters from Amnesty International in 1996. The letters asked Dr. Mwathi to support and to assist doctors who were treating political prisoners and torture victims and also urged him to contact the medical association to encourage the government to stop human rights violations. According to Mwathi, her husband did report human rights violations but she could not recall the details of what was reported. Mwathi testified that at some point, the Kenyan Department of Defense also inquired about the letters from Amnesty International and stated that they did not approve of Dr. Mwathi providing medical treatment to prisoners, many of whom participated in political rallies and demonstrations against the government.

Mwathi testified that after her husband's funeral, her fear of persecution increased. The police came to her home and arrested her and her son, mother, and cousins. The police also searched the house and recovered a letter from Amnesty International, requesting Dr. Mwathi's assistance to report human rights violations. The police detained Mwathi for ten days in a detention cell that had a leaky roof and inadequate bathroom facilities. The police also questioned Mwathi about her husband's political involvement and whether he had planned to run for political office. Mwathi stated that the harassment and threats by the government continued after she was released from prison. She was falsely accused of failing to pay taxes by the Government's Income Tax Office and

harassed at her job and at home. Even after her job was eliminated, she experienced harassment by the government as a business owner selling wines and spirits. She sold her business in 2001 as a result of this harassment.

In addition to her testimony about persecution, she also submitted news articles and reports discussing Kenya's unstable political environment including: the 1999, 2002, and 2006 U.S. Department of State Country Reports, and a 2007 BBC news article.

The IJ also heard testimony from two witnesses who were friends of Dr. Mwathi and were familiar with his political involvement. Mr. Meshak Kinjanjui ("Kinjanjui") testified that he had been friends with Dr. Mwathi since 1982. Kinjanjui stated that he was aware that Dr. Mwathi belonged to a political opposition group in Kenya, but he did not know the name of Dr. Mwathi's opposition party. Kinjanjui also testified that he knew that Dr. Mwathi disagreed with certain military officers within the Department of Defense over the issue of government corruption, and Dr. Mwathi expressed concern that some government leaders knew of his disposition against the government. Kinjanjui testified that many of these leaders were unhappy about Dr. Mwathi's outspokenness.

Mr. Mguambi Karanja ("Karanja") also provided testimony at the hearing and stated that he was an acquaintance of Dr. Mwathi. Karanja was the former managing editor of *The East African Standard*, a leading newspaper in Kenya. Karanja testified that he suspected Dr. Mwathi's death was a political assassination and found it suspicious that the police were not continuing to investigate the murder. In addition, Karanja testified that it was well-known in Kenya that the government

prohibited speaking out against government corruption, and that anyone who did so could possibly be targeted by the government.

The IJ denied Mwathi's application and ordered her removed. The IJ found insufficient evidence to establish both past persecution and the fear of future persecution in Kenya on account of an imputed political opinion. Mwathi filed a notice of appeal with the BIA. On July 1, 2009, the BIA affirmed the IJ's decision. The BIA concluded that Mwathi failed to establish a harm rising to the level of past persecution or a well-founded fear of future persecution. In its decision, the BIA acknowledged that the IJ failed to set forth the "reasonable possibility" standard for a well-founded fear of persecution but determined that the omission was a harmless error. *See INS v. Elias-Zacarias*, 502 U.S. 478, 489–90 (1992).

Mwathi timely petitioned for review of the BIA's decision to this Court, which has authority to review the BIA decision under 8 U.S.C. § 1252.

## DISCUSSION

### I.    PERSECUTION

Mwathi argues that the BIA erred in finding that she failed to establish a nexus between her fear of persecution from the government and her husband's political opinion. She contends that the evidence provided during the IJ hearing is proof that the Kenyan government will continue to persecute her because her husband, Dr. Mwathi, was a member of a political opposition group.

The Attorney General has the discretion to grant asylum to a refugee who shows that she has suffered past persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion," or that she has a well-founded fear of future persecution on these

grounds. 8 U.S.C. § 1101(a)(42). "Persecution 'requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty.'" *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005) (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998)). The applicant bears the burden of proof to establish that she is a refugee. 8 U.S.C. § 1158(b)(1)(B)(I). Once an applicant establishes past persecution, there is a rebuttable presumption that the applicant has a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). Past persecution is based on "the overall context of the applicant's situation." *Haider v. Holder*, 595 F.3d 276, 286 (6th Cir. 2010) (internal citation omitted). Thus, the IJ reviews the evidence of past persecution "in the aggregate, as a collection of harmful events, even though they may not qualify individually as persecution, that may taken together constitute persecution." *Id*. (internal citations and quotation omitted). However, if an applicant cannot demonstrate past persecution, the applicant may establish refugee status by independently showing that the applicant has a well-founded fear of future persecution if "there is a reasonable possibility of suffering such persecution" upon return to her native country. 8 C.F.R. § 1208.13(b)(2).

### A.    Past Persecution

Mwathi failed to produce sufficient evidence of past persecution. There is no connection between the evidence of her husband's membership in a political opposition group and Mwathi's experiences of persecution. In addition, no evidence presented by Mwathi suggests that she was or is presently a member of the same political opposition group as her husband.

Mwathi's reliance on the case of *Bu v. Gonzales*, 490 F.3d 424 (6th Cir. 2007) is misplaced. In *Bu*, we reversed the decision of the BIA and concluded that Bu was detained as a "political prisoner who was guilty of opposition to the government." *Id*. at 429. Bu served as the chairman of the labor union at a state-owned optical equipment factory. Bu stated that the factory had a "history of corruption . . . and bribery." *Id*. at 425. As conditions in the factory declined and workers lost wages and benefits, Bu organized a strike to protest against the corruption. *Id*. at 426. Bu was later arrested and questioned by the police about his involvement in the strike, in which he admitted his role in organizing the factory workers. We found Bu provided sufficient evidence that his detainment was a result of his political affiliation. We also considered in the aggregate Bu's evidence that he "acted upon his political opinion about government corruption and that his detention and abuse were motivated by this activity." *Id*. at 430. This included Bu's confinement in jail for seven days where he was so severely beaten that he had to be taken to the hospital upon release. In addition, Bu's wife also received threatening phone calls and visits from the police inquiring about his whereabouts. The 2002 U.S. Department of State Country report on Human Rights Practices for China further corroborated Bu's allegations of imputed political opinion finding that "official corruption was a major problem in China at the time of Bu's encounter with the local police." *Id*. at 428.

The facts in *Bu* are clearly distinguishable from the facts of this case. At most, Mwathi experienced some verbal abuse, threats, and a brief detainment, but this harassment did not rise to the level of persecution as it had in *Bu* or demonstrate the appropriate nexus to her political opinion. If Mwathi had any inclination that she was being persecuted or feared persecution, she would have

left Kenya immediately. Instead, Mwathi waited almost a year after she received her non-immigrant visa to move to the United States. Therefore, the BIA's conclusion that Mwathi did not experience past persecution or establish a well-founded fear of future persecution on account of her political opinion is supported by substantial evidence.

**B.      Future persecution**

Since Mwathi failed to establish substantial evidence of past persecution, she must independently establish evidence of future persecution. Mwathi argues that the BIA ignored probative evidence in the 1999, 2002, and 2006 Country Reports, and a 2007 BBC news article that described Kenya's unstable political environment.

We review an IJ's interpretation of country conditions for whether the IJ reached a "reasonable conclusion." *Kouljinski v. Keisler*, 505 F.3d 534, 544 (6th Cir. 2007). The applicant is required to identify "evidence that compels the opposite conclusion" before we disturb the IJ's treatment of country condition reports. *Id*. at 544.

The IJ properly considered the country reports as part of his overall determination to deny Mwathi's asylum claim and found the reports inconsistent with Mwathi's statements. We agree. The 2006 U.S. Department of State country report is contrary to Mwathi's argument of the likelihood of future persecution. The report concluded that "there were no reports that the government or its agents committed politically motivated killings during the year." The report also stated that "there were no reports of political prisoners or detainees."

Similarly, the BBC news article also fails to corroborate Mwathi's argument of future persecution. The BBC news story reported on supporters of political parties who were injured as a

result of the disputed primary elections. There is no way to connect this particular news story with Mwathi's evidence that Dr. Mwathi belonged to a political opposition party. Neither Mwathi nor her two witnesses could provide testimony about Dr. Mwathi's political affiliation. Both the 2002 and 1999 U.S. Department of State country reports only summarized the political and social situation in Kenya and described isolated incidents of political disputes. The reports do not indicate that political violence was widespread or systematic and do not support Mwathi's claim of the likelihood of future persecution. Therefore the BIA properly concluded that Mwathi failed to establish a nexus between her fear of persecution and her husband's anti-government political opinion.

## II.      DUE PROCESS VIOLATION

Mwathi raises a due process violation alleging that the BIA's decision was based upon unclear and confusing findings as the IJ and BIA failed to articulate a legal standard of proof to deny her asylum claim. Mwathi also claims that the IJ and BIA failed to consider the totality of the evidence presented by Mwathi and that the IJ based its decision to deny her petition on a preconceived view of the case.

We review *de novo* allegations of due process violations in removal hearings. *Ndrecaj v. Mukasey*, 522 F.3d 667, 673 (6th Cir. 2008) (citing *Mikhailevitch*, 146 F.3d at 391). The Fifth Amendment extends due process rights to aliens entitling them to a full and fair hearing; however, the IJ retains "broad discretion in conducting that hearing." *Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009) (quoting *Castellano-Chacon v. INS*, 341 F.3d 533, 553 (6th Cir. 2003)). In reviewing an alleged due process violation, we conduct a two-step inquiry: 1) whether "there was a defect in the removal proceeding;" and 2) "whether the alien was prejudiced because of it." *Vasha v. Gonzales*,

9

410 F.3d 863, 872 (6th Cir. 2005). A due process violation occurs only when "the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005) (quoting *Ladha v. INS*, 215 F.3d 889, 904 (9th Cir. 2000)).

## A.      Defect in the Removal Proceeding

Mwathi fails to establish that there was a defect in the removal proceeding. The BIA clearly set forth a standard of review by stating in its decision that the factual findings of the IJ are reviewed *de novo*. In affirming the IJ's decision, the BIA explained that Mwathi did not prove by substantial evidence that she experienced past persecution or demonstrate a reasonable possibility of future persecution. The BIA also cited to the appropriate case law to further support its contention. While the BIA acknowledged that the IJ did not "explicitly set forth the 'reasonable possibility' standard" in review of Mwathi's persecution claim, the BIA asserted that this mistake was harmless error and that the IJ correctly denied the asylum application. Thus, the absence of an explicitly stated "reasonable possibility" standard was harmless and not dispositive to the outcome of the case. Regardless of the standard, we find the outcome in this case would remain unchanged as Mwathi failed to establish the required nexus to a protected group.

In addition, there is insufficient evidence to conclude that the IJ and BIA denied Mwathi's claims based upon a preconceived notion of the case. The IJ highlighted holes in the testimony of Kinjanjui and Karanja by stating that the testimony lacked substance. We agree. The testimony of the two witnesses was more speculation than substance. The witnesses admitted that they were unaware of Dr. Mwathi's political affiliation yet they were unable to provide a sufficient explanation

as to why Dr. Mwathi feared for his safety and continuously spoke out against government corruption. We find sufficient evidence to determine that the IJ and BIA considered all of the facts presented to make an informed decision.

### B.      Prejudice to the Applicant

We conclude that Mwathi did not face prejudice that would violate her due process rights in view of the fact that there is no evidence of any defect of removal proceedings by the IJ or BIA.

## III.    WITHHOLDING OF REMOVAL AND THE CONVENTION AGAINST TORTURE

Under the CAT, removal must be withheld if it is more likely than not that the applicant would be tortured if removed to the proposed country of removal. 8 C.F.R. § 1208.16(c)(2). In order to succeed on a withholding of removal claim, an applicant "must show a clear probability of persecution." *Dugboe v. Holder*, 644 F.3d 462, 472 (6th Cir. 2011) (internal citation and quotation omitted).

If the BIA adopts the IJ's decision to deny an applicant's withholding of removal claim under the CAT, we review "the IJ's decision directly to determine whether the decision of the BIA should be upheld on appeal." *Amir v. Gonzales*, 467 F.3d 921, 924 (6th Cir. 2006) (quoting *Gilaj v. Gonzales*, 408 F.3d 275, 282–83)(6th Cir. 2005)). We must uphold the IJ's denial of withholding under the CAT unless it is "manifestly contrary to the law." *Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001).

Mwathi argues that the IJ erred in its decision to deny her withholding of removal claim and protection under CAT. We have previously recognized that both withholding of removal claims and CAT claims require a higher level of scrutiny compared to establishing a claim for asylum. *See*

11

*Pilica v. Ashcroft*, 388 F.3d 841, 951 (6th Cir. 2004); *Koliada v. INS*, 259 F.3d 482, 489 (6th Cir. 2001). Mwathi's evidence does not meet the heightened standard for relief under withholding of removal and CAT. Therefore, we deny the petition for review on this basis.

## CONCLUSION

For the foregoing reasons, we **DENY** Mwathi's petition for review.