NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0495n.06

No. 23-3317

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Dec 04, 2023
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| JOAQUIN EDUARDO CARMONA-GONZALEZ, | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| v. | ) | UNITED STATES EXECUTIVE |
| | ) | OFFICE FOR IMMIGRATION |
| MERRICK B. GARLAND, Attorney General, | ) | REVIEW |
| Respondent. | ) | OPINION |
| | ) | |

Before: GRIFFIN, KETHLEDGE, and THAPAR, Circuit Judges.

KETHLEDGE, Circuit Judge. Joaquin Eduardo Carmona-Gonzalez (Carmona) petitions for review of an immigration judge's determination that Carmona failed to show a reasonable possibility that he would be persecuted or tortured if removed to Mexico. But substantial evidence supports that determination, so we deny Carmona's petition.

I.

Carmona was born in Mexico in 1976. His father died in 1985, while serving as mayor of Tuxpan, Mexico. A friend told Carmona that a prominent and powerful politician—Cuauhtémoc Cárdenas—had Carmona's father killed because he had clashed with Cárdenas. Carmona says that, in 2001, several men came to his home in Mexico and warned him to stay quiet about his father's murder or else harm would come to him and his family. The men also slapped Carmona and told him to find somewhere else to live. Carmona said he did not report that incident to authorities because of Cárdenas's prominence and the prevalence of police corruption in Mexico.

Carmona entered the United States on a tourist visa in February 2002, and overstayed his visa thereafter. In March 2007, when returning to the United States from Mexico, Carmona applied for a non-immigrant visa and admitted, under oath, that he had worked illegally in the United States and that he had no fear of returning to Mexico. DHS issued an expedited removal order and returned Carmona to Mexico the same day.

Four days later, border patrol agents detained Carmona as he crossed the border illegally. Again, Carmona reported no fear of returning to Mexico, and DHS returned him there pursuant to an expedited order of removal. Ten days later, agents detained Carmona after he again reentered the United States illegally. This time, DHS reinstated Carmona's prior order of removal. He also was convicted in federal court of illegal reentry and sentenced to "time served." The DHS then removed Carmona to Mexico in June 2007.

Back in Mexico, Carmona lived in Senora, where he had a relationship with a woman whose family allegedly belonged to a cartel. In March 2008, after Carmona ended that relationship, cartel members ambushed and severely beat him, breaking his nose. Witnesses gave statements to authorities and Carmona tried to press charges; but Carmona says the police erased from Carmona's phone text messages that contained threats from his assailants. The woman's father also called Carmona several times in the months that followed, threatening to make him "pay" for ending the relationship with his daughter.

Carmona reentered the United States yet again in May 2008 and avoided immigration authorities until September 2019, when he was arrested for assaulting his girlfriend. Carmona was convicted again of illegal entry and sentenced to two years' probation in December 2022. In March 2023, DHS again reinstated Carmona's prior removal order. This time, however, Carmona expressed fear of returning to Mexico; DHS referred him to an asylum officer for a reasonable-

fear interview. *See* 8 C.F.R. § 208.31. The officer promptly interviewed Carmona and determined that he had not established a reasonable fear that he would be persecuted or tortured if returned to Mexico. *See id.* § 208.31(c). An immigration judge (IJ) agreed with that determination in April 2023. Carmona then filed this petition for review of the IJ's order. Under our precedent, that order is final for purposes of judicial review. *See Kolov v. Garland*, 78 F.4th 911, 918–19 (6th Cir. 2023).

## II.

The parties agree that we review the IJ's determination for substantial evidence. We review legal questions de novo and uphold the agency's factual findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Umana-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013) (quoting 8 U.S.C. § 1252(b)(4)(B)).

Immigration law authorizes an expedited process for reinstatement of a prior removal order when a previously deported alien reenters the United States illegally. *See* 8 U.S.C. § 1231(a)(5). That process eliminates the need for new removal proceedings, and the reinstated order "is not subject to being reopened or reviewed." *Id.* Instead, the only available relief from such an order is statutory withholding of removal under 8 U.S.C. § 1231(b)(3)(A) or protection under the Convention Against Torture (CAT). *See Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2282–83 (2021). Before the alien can apply for such relief, however, he must make a threshold showing of "a reasonable possibility" either that he would be persecuted on account of a protected ground or that he would be tortured in the country of removal. *See* 8 C.F.R. § 208.31(c). Carmona tried to make both showings.

Carmona argues that he demonstrated a reasonable possibility of persecution on account of family relationship if removed to Mexico. Carmona claims he was subject to past persecution,

which if true would create a presumption of future persecution. *See* 8 C.F.R. § 208.16(b)(1)(i). Specifically, Carmona says that Cárdenas had his father killed in 1985, when Carmona was nine years old, and that Cárdenas's associates threatened and slapped him 16 years later, in 2001. A reasonable adjudicator could find, however, that those incidents do not show a reasonable possibility that Carmona would be persecuted on the basis of his family relationship. The 2001 incident does not compel a contrary finding because only the "most immediate and menacing" of threats constitute past persecution. *See Japarkulova v. Holder*, 615 F.3d 696, 701 (6th Cir. 2010) (citation omitted). The murder of Carmona's father itself was not past persecution of Carmona on account of his family relationship because that killing was not the result of a family relationship. (Instead, Carmona admits it was based on a personal political conflict.) *See Guzman-Vazquez v. Barr*, 959 F.3d 253, 274 (6th Cir. 2020).

Carmona fears future persecution because, he says, Cárdenas might think Carmona would make trouble about his father's death in 1985. But Carmona's father died more than 35 years ago, and Carmona received only one warning to stay quiet more than 20 years ago. Carmona responds by pointing to a December 2018 incident in which armed men allegedly broke into a ranch owned by Carmona's family in Mexico, stole everything of value, and threatened to kill Carmona if they found him. (He was in the United States at the time.) But the IJ saw no connection between those threats and Cárdenas. The evidence does not compel a contrary conclusion.

Carmona also argues that he demonstrated a reasonable possibility that he would be tortured in Mexico—either because Cárdenas would come after him or because his ex-girlfriend's family would attack him. The regulations define torture as severe pain or suffering that is intentionally "inflicted by or at the instigation of or with the consent or acquiescence of" a person

acting in an official capacity. 8 C.F.R. § 208.18(a)(1); *see also Amir v. Gonzales*, 467 F.3d 921, 927 (6th Cir. 2006).

Carmona has not made that showing here. The IJ found nothing that tied the December 2018 threats to either Cárdenas or his ex-girlfriend's family. Carmona fears his ex-girlfriend's family will harm him because he broke up with her in March 2008. But Carmona left Mexico in May 2008, and admits he has not been threatened by them since then. Moreover, the IJ agreed with the asylum officer's finding that no evidence established "a reasonable possibility that a public official would consent or acquiesce to future harm" to Carmona by his ex-girlfriend's family. Substantial evidence supports both those findings by the IJ.

Finally, Carmona argues that gaps in his hearing transcript violated due process because, he says, they preclude meaningful review of the IJ's decision. But Carmona himself did not testify before the IJ; the hearing transcript makes clear that the IJ reviewed all the materials that Carmona had submitted. The gaps in the transcript therefore lacked prejudicial effect. *See Abdallahi v. Holder*, 690 F.3d 467, 472 (6th Cir. 2012).

*       *       *

The petition for review is denied.