NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0234n.06
Filed: March 27, 2009

No. 08-3077

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| YIRONG CHEN, | ) | |
| | ) | **PETITION FOR REVIEW OF ORDER OF** |
| Petitioner, | ) | **BOARD OF IMMIGRATION APPEALS** |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC H. HOLDER, JR., | ) | |
| Attorney General of the United States, | ) | |
| | ) | |
| Respondent. | ) | |

BEFORE:    KEITH, SUTTON and GRIFFIN, Circuit Judges.

**KEITH, Circuit Judge.**  Petitioner Yirong Chen seeks this court's review of an order from

the Board of Immigration Appeals (the "BIA"), denying his application for asylum, withholding of

removal and protection under the Convention Against Torture based on an adverse credibility

determination.  Because substantial evidence supports the BIA's decision, we **DENY** the petition

for review and **AFFIRM** the BIA's decision.

I.

Petitioner Yirong Chen ("Chen") is a native and citizen of the People's Republic of China

("China").  On April 17, 1993, he entered the United States through Nogales, Arizona, without being

admitted or paroled by an immigration officer.  Chen subsequently filed an application for asylum,

withholding of removal, and protection under the Convention Against Torture with the Immigration

and Naturalization Service ("INS"),[1] and was interviewed by an asylum officer on December 9, 1996. On May 15, 1997, INS initiated removal proceedings against Chen, pursuant to 8 U.S.C. § 1229(a). He was charged with being an alien present in the United States, who has not been admitted or paroled under Section 212(a)(6)(A)(I) of the Immigration and Nationality Act. In a full hearing before an Immigration Judge ("IJ"), Chen conceded that he was subject to removal, and the court sustained the charge.

Chen filed two additional applications for asylum, withholding of removal, and relief under the Convention Against Torture. All three applications for asylum were premised on Chen's alleged fear of persecution, as a result of his purported resistance to China's family planning practice. The evidence at Chen's hearing before the immigration court consisted of: (1) his testimony; (2) his three applications for asylum;[2] (3) a copy of a diagnosis x-ray; (4) copies of what he purports are sterilization certificates for his wife and himself; (5) a fine receipt issued by the Chinese government;

---

[1]The Department of Homeland Security now performs functions formerly attributable to the INS.

[2]In support of his asylum applications, Chen provided the following unauthenticated and untranslated documents: (1) photocopies of an ID purportedly issued by the Chinese Government; (2) a purported marriage certificate; (3) a purported residential certificate for him, his wife and his first and second daughters; (4) a purported birth certificate for his third daughter; (5) purported sterilization certificates for his wife and himself; and (6) a purported fine receipt issued by the Chinese government. Chen also submitted a purported report of his wife's x-ray diagnosis. This document appears to have been translated, and the accuracy of the translation appears to have been certified before a notary public. The reliability of these documents is questionable in light of the 1998 Profile Report submitted by the Government, which states that documentation from the Fujian province is subject to widespread fabrication and fraud, including documents that are designed to verify identities, personal histories, and birth and birth control measures, as established by direct investigation of U.S. officers in the Consulates General at Guangzhou and Shanghai.

and (6) a supplemental statement. The Government submitted copies of: (1) the *Profile of Asylum Claims & Country Conditions* (the "Profile Report") on China from April 1998 and June 2004 and (2) *Country Reports* on China from 1999, 2003, 2004 and 2005.

On April 5, 2006, the IJ found that Chen lacked credibility because he failed "to provide convincing explanations for" discrepancies and omissions in his testimony. The IJ cited inconsistences and unconvincing explanations related to: (1) the existence of a third child; (2) the circumstances surrounding Chen's allegedly forced sterilization; (3) Chen's failure to explain why the government waited eighteen months to sterilize him after the birth of his second child; (4) the circumstances surrounding Chen's wife's intrauterine device ("IUD") and forced sterilization; and (5) Chen's alleged detention and his wife's alleged arrest. The IJ found that Chen's inconsistencies as to sterilization and the existence of family members were material, since they went to the substance of his claim that he was resisting China's "coercive" family planning practices.

The IJ was also suspicious of Chen's claim that he was sterilized sometime in 1992, given the 1988 Profile Report drafted by the State Department, which found that there have been "no, or few, examples" since the 1980s of forced sterilizations or abortions in the region where Chen resided. The IJ also noted that Chen failed to submit, in any of his three applications, medical evidence from a specialist demonstrating that he had, in fact, been sterilized.

The IJ's decision became the final agency decision on December 26, 2007 when it was adopted and affirmed by the BIA. *See Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007).

**II.**

- 3 -

In the instant appeal, Chen challenges the IJ's finding that his oral testimony and written statements about past persecution lacked credibility.[3]  We review the IJ's credibility determination under the deferential substantial evidence standard, which mandates that we find the agency's factual findings to be conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B); *Tapucu v. Gonzales*, 399 F.3d 736, 738 (6th Cir. 2005); *Hassan v. Gonzales*, 403 F.3d 429, 434 (6th Cir. 2003).  The IJ's reasons for rendering an adverse credibility determination must go to "the heart of the applicant's claim."[4]  *Sterkaj v. Gonzales*, 439 F.3d 273, 275 (6th Cir. 2006) (internal quotation marks omitted).

Given Chen's many inconsistent statements concerning material matters, and his failure to corroborate his weak testimony with any evidence establishing the truth of his alleged persecution, there is substantial evidence to support the IJ's adverse credibility determination.  *See Matter of A-S-*, 21 I. & N. Dec. 1106, 1112 (BIA 1998) (stating "a credibility determination apprehends the overall

---

[3]On review before the BIA, Chen raised his withholding of removal claim in a perfunctory manner and his claim as to protection under the Convention Against Torture only to state that it was denied before the IJ.  Accordingly, any appeal as to these issues has been waived.  *See* 8 U.S.C. § 1252(d)(1); *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004).  Nonetheless, even if we were to find that these issues had not been waived, because we ultimately find that the IJ was correct in rendering an adverse credibility determination against Chen, he has necessarily failed to meet his burden of proof for withholding of removal and relief under the Convention Against Torture.  *Berri v. Gonzales*, 468 F.3d 390, 397-98 (6th Cir. 2006); *Guang Run Yu v. Ashcroft*, 364 F.3d 700, 703 n.3 (6th Cir. 2004).

[4]The Real ID Act of 2005 changes the standards governing credibility determinations, making it unnecessary for inconsistencies, inaccuracies and falsehoods to go to the heart of the applicant's claim.  8 U.S.C. §1158(b)(1)(B)(iii); *Amir v. Gonzales*, 467 F.3d 921, 925 n.4 (6th Cir. 2006).  This provision, however, does not apply to the instant case, as the Real ID Act of 2005 only governs cases filed after May 11, 2005, and Chen filed his initial asylum application in 1993 and his second and third applications in 1999 and 2004, respectively.  *Amir*, 467 F.3d at 925 n.4.

evaluation of testimony in light of its rationality or internal consistency and the manner in which it hangs together with other evidence") (citations and internal quotation marks omitted); *Matter of Y-B-*, 21 I. & N. Dec. 1136, 1139 (BIA 1998) (stating that "the weaker an alien's testimony, the greater the need for corroborative evidence"). We therefore need not expressly consider Chen's claim for asylum. *See Guang Run Yu v. Ashcroft*, 364 F.3d at 703.

We must address one procedural issue before turning to the inconsistent facts at issue in this case. To his first asylum application, Chen attached a document entitled "Addendum." The name on the Addendum was not his own, but listed within the text was the year Chen's wife first became pregnant and the birth date of his first child. Chen asks this Court to discount the IJ's finding as to the Addendum as well as unidentified "dates" and their relevance to his credibility, but has failed to demonstrate that he raised this argument to the BIA before raising it here. We are precluded from reviewing procedural errors that could have been corrected by the BIA, but are being raised for the first time on appeal. *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). Because there is more than sufficient evidence independent of the Addendum that demonstrates Chen's lack of veracity, it would be futile to remand this issue to determine whether the Addendum should be discounted. *Xiao Ji Chen v. United States DOJ*, 471 F.3d 315, 339 (2d Cir. 2006) (stating "[t]he overarching test for deeming a remand futile . . . is when the reviewing court can 'confidently predict' that the agency would reach the same decision absent the errors that were made"). Instead, we will review Chen's adverse credibility determination without regard to the Addendum. We turn now to the inconsistencies in Chen's testimony.

**A.      The Existence of a Third Child**

Chen acknowledged in his hearing before the IJ that he underwent an asylum interview in Chicago, based on the first application he filed, where he was placed under oath and provided with an interpreter who spoke Mandarin. When questioned before the IJ as to why he failed to mention in his initial application the existence of a third child, who allegedly had already been born, Chen stated that he was not sure of the laws in the United States, his attorney simplified his story, and he thought he might be fined for an additional child because he was not sure the United States and China were entirely different.

Chen rests his asylum claim on his assertion that he was persecuted, and fears persecution, due to his resistance to China's family planning policies. His failure to provide a rational explanation as to why he initially omitted the existence of a third child, directly concerns whether or not he was exercising a political opinion that rendered him vulnerable to persecution. Particularly puzzling and destructive to Chen's asylum claim is the fact that he informed the IJ that it was legal for him to have a second child in the rural village where he lived. During his merits hearing before the IJ, Chen could not explain away the discrepancy this created with his first application, which listed only two children as the basis on which he was persecuted, conceding that: "I'm not so clear about [sic] because the interview for the political asylum officer was very strict and he was yelling and then I told the truth." Chen's credibility is damaged on this ground.

## B. Sterilization

Chen also changed his story multiple times between his initial application and his hearing before the IJ as to the circumstances surrounding his allegedly forced sterilization surgery. Chen stated in his merits hearing before the IJ that he suffered forced sterilization after the birth of his

second child. Chen was asked on cross-examination why he did not mention this in his initial application, and he stated that at the time he "was a stupid guy; I didn't know anything. And now, I've been in the United States for awhile and I know." He also stated in the merits hearing that he was given a choice, following the birth of his second child, between either being sterilized himself or having his wife sterilized. When confronted with an earlier sworn statement in which Chen said he was given a choice between being sterilized or losing his grocery store license, Chen said he did not remember why initially he had made that statement. Chen also could not adequately explain why the Chinese government allegedly waited eighteen months after the birth of his second child, who was born in a public hospital, to sterilize him. Instead, he merely asserted that "we didn't have any contraceptive method so they, at the time, China was pushing this family planning policies very in urgency."

Before the IJ, Chen stated that his wife was sterilized after the birth of their third child. He also stated that before she was sterilized she had an IUD that accidently fell out. When asked why he had initially said it was secretly removed, he could not provide an explanation.

The inconsistencies in Chen's testimony concerning his sterilization and his wife's sterilization are material, since their purported sterilizations are one of the main grounds Chen relies upon to demonstrate past persecution. Furthermore, if Chen was actually sterilized, he could have easily corroborated his alleged sterilization through medical evidence. *See Matter of Y-B-*, 21 I. & N. Dec. at 1139. His failure to submit such evidence further discredits his testimony.

## C. Arrest

Chen also changed his testimony (in both written and oral form) regarding his alleged

detention and his wife's purported arrest. Before the IJ, Chen was asked why he did not mention whether he or any of his family members had been arrested in his first application but later claimed that he was detained and his wife was arrested. He responded that he did not know anything at the time he filled out the application form, he merely asked for some help from the immigration service, and they wrote down a simple story. This insufficiently explained inconsistency is material, as again, it concerns evidence that would support Chen's claim that he was persecuted due to his resistance to China's family planning policy.

## III.

Chen has failed to demonstrate any evidence in the record that compels a conclusion contrary to the agency's adverse credibility determination. Therefore, finding no error in the agency's decision, we **DENY** the petition for review and **AFFIRM** the BIA's decision.