NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0315n.06

No. 18-3559

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 20, 2019
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| ANGELICA YOLANDA CALEL PEREIRA; A.A.C.P., Minor Child, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) ) ) |
| WILLIAM P. BARR, Attorney General, | ) ) |
| Respondent. | ) ) ) |

ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS

BEFORE: **BATCHELDER, SUTTON, and DONALD, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge**. Angelica Pereira and her minor daughter seek to avoid removal from the United States. Pereira applied for asylum, withholding of removal, and protection under the Convention Against Torture. The Immigration Judge denied her application on all of these grounds, and the Board of Immigration Appeals dismissed her appeal. She now petitions this court to review her claim. She argues that the Immigration Judge and Board of Immigration Appeals wrongly denied her application for asylum and her claim under the Convention Against Torture using erroneous legal standards, and that the Immigration Judge's conclusion that Pereira failed to show she had a well-founded fear of future persecution in her native Guatemala was not supported by substantial evidence.

Pereira's application was evaluated under the proper legal standards in both instances, and we find that the record contains sufficient evidence to support the conclusion reached by the IJ and affirmed by the BIA. We **DENY** Pereira's petition for review.

## I.

Petitioner Angelica Yolanda Calel Pereira ("Pereira") and her seven-year-old daughter, A.A.C.P., fled their home in Guatemala in 2015 and entered the United States in December of that year. They were detained, admitted without authorization, and conceded their removability. Once here, Pereira applied (both for herself and A.A.C.P.) for asylum, withholding of removal, and for relief under the U.N. Convention Against Torture ("CAT").

There is no dispute that Pereira experienced serious violence and hardship at the hands of local gangs in her native Guatemala. A gang member killed her mother several years ago, though Pereira remained in Guatemala for six years after that. Moreover, gang members repeatedly subjected Pereira to intimidation and harassment, both before and after her mother's death.

The Immigration Judge ("IJ") denied Pereira's applications for asylum, withholding of removal, and CAT protection. Pereira timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). The BIA dismissed Pereira's appeal in its entirety. Pereira properly petitioned this court for review pursuant to 8 U.S.C. §§ 1252(a), (b)(2).

## II.

Under 8 U.S.C. § 1252(a)(2)(D), our review of Pereira's claim is limited to "constitutional claims or questions of law" raised by the petitioner. We review the BIA's legal determinations de novo, *Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004), and its factual findings for substantial evidence, *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004). While our review focuses on the BIA's decision as a final agency determination, *Shan Dong Lin v. Holder*, 454 F. App'x 472, 474

(6th Cir. 2012), to the extent that the BIA "adopts the IJ's reasoning, the Court reviews the IJ's decision," *Mapouya v. Gonzales*, 487 F.3d 396, 405 (6th Cir. 2007).

## A.

Pereira petitions for review of the BIA decision to deny her application for asylum. That application has two components. "First, the Board determines whether an asylum-seeker is a 'refugee' and second, it determines whether the applicant's circumstance 'merits a favorable exercise of discretion by the Attorney General.'" *Nifadev v. Holder*, 577 F. App'x 481, 485 (6th Cir. 2014) (quoting *Perkovic v. I.N.S.*, 33 F.3d 615, 620 (6th Cir. 1994)). Congress defined "refugee" in this context as "any person who is outside [his or her] country of . . . nationality . . . and who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

The IJ denied Pereira's asylum claim because she failed to "establish[] that [her] persecution occurred or will occur on account of a protected ground." The BIA, in turn, dismissed Pereira's appeal because it was "not persuaded that the Immigration Judge clearly erred in finding that the respondent did not establish that a protected ground was at least one central reason for her persecution or fear of future persecution."

Pereira appeals these decisions on two grounds: first, that both the BIA and IJ applied the wrong standard to her claim that she suffered persecution on account of her membership in a protected class; and second, that the IJ found, without substantial evidence, that Pereira does not have a well-founded fear of future persecution. We address each argument in turn.

*Erroneous Legal Standard.* The legal standard that should have been applied by the IJ and BIA, according to Pereira, is whether she had shown that her membership in a protected class "was

or will be at least one central reason" for her persecution or fear of persecution. 8 U.S.C. § 1158(b)(1)(B)(i). Pereira argues that the IJ rejected her claim because she failed to show that her protected status was the only central reason for her persecution.

Pereira mischaracterizes the IJ's opinion. The IJ's analysis of this issue plainly finds that Pereira "fails to show that she was persecuted because of her membership in this protected group." The opinion repeatedly explains that:

- "the record does not support that the gang's central reasons for targeting of [Pereira] was because of her indigenous background";
- "fear of general conditions of gang violence is insufficient to establish eligibility for asylum"; and
- "[Pereira]'s claim seems to draw upon just one manifestation of a larger gang problem that Guatemala faces."

But the IJ's opinion does contain a moment of ambiguity, on which Pereira's appeal focuses. The IJ states that "[Pereira's] testimony indicates that it is more likely that [she] was a target of generalized crime and violence and because she is an indigenous female." The sentence is awkward. The IJ found either that the crime and violence Pereira suffered was "generalized" or that she suffered crime and violence "because she is an indigenous female." Suffering crime and violence *because* of one's protected status is the opposite of suffering from "general conditions of gang violence." The reading of the sentence that Pereira urges also renders the entire passage incoherent; the conclusion that Pereira was a target of crime and violence because she is an indigenous female directly contradicts what the IJ repeatedly found immediately preceding that sentence. The entire context of the passage leaves us with no doubt that "and" is simply a transcription error and that the IJ intended to write "than." Meaning, that it is more likely that Pereira was a target of generalized crime and violence, *than* because she is an indigenous female.

Two Sixth Circuit decisions provide some guidance for what to do in a situation of potential ambiguity in an IJ's opinion. In *Diallo v. Gonzales*, 241 F. App'x 312 (6th Cir. 2007), an IJ mistakenly conflated the subjective and objective components of the credible fear analysis. We "suspect[ed] that the IJ may have simply misspoken during the dictation of his decision, and that he was actually analyzing whether Mr. Diallo's fear was 'objectively reasonable,' which is the proper inquiry under the objective prong." *Id*. at 315. In that case, we remanded, though it is worth noting that we had additional cause to remand in that case because the IJ had given short shrift to Diallo's claim of past persecution by failing to explain why Diallo's prior imprisonment did not qualify as past persecution. *Id*. at 316.

In *Soto-Murillo v. Lynch*, 643 F. App'x 504, 507 (6th Cir. 2016), on the other hand, the IJ made a factual error by saying that Soto-Murillo first came to the United States in 2010, when in fact he had first entered the United States in 2003. Looking to the preceding paragraphs in the IJ's opinion, it was clear to the court that the IJ was aware of the correct date and had merely committed a typographical error. *Id*. The *Soto-Murillo* court distinguished its facts from those in *Diallo*, explaining that the typographical error did not render the court incapable of determining whether the IJ applied the correct legal standard. *Id*. at 507. Per *Soto-Murillo*, what matters is whether a linguistic foible in the IJ's opinion prevents us from determining if the correct legal standard was applied. It does not. We, like the BIA, can determine from the IJ's opinion that the IJ rejected Pereira's claim under the proper standard, namely that her membership in a protected social group was not at least one of the central reasons for the harm Pereira experienced or fears she will experience.

*Substantial Evidence*.  Pereira also contends that her application for asylum was wrongly dismissed by the BIA because the IJ lacked substantial evidence when it found that Pereira failed to show that she "has a well-founded fear of future persecution." 8 C.F.R. § 208.13(b).

The BIA concluded that the IJ did not clearly err "in finding that [Pereira] did not establish that a protected ground was at least one central reason for her persecution or fear of future persecution," but instead "that the respondent was the target of generalized crime and violence."

Reviewing a BIA determination for substantial evidence, we may reverse only if the evidence in the record "*compels*" a "contrary conclusion." *Gilaj v. Gonzalez*, 408 F.3d 275, 283 (6th Cir. 2005) (quoting *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003). We find that the record does not "compel" Pereira's desired conclusion and therefore decline to disturb the BIA's finding.[1]

The IJ's analysis of Pereira's claim of fear of future persecution focused on whether she is likely to be subject to *any* violence.  This is also how Pereira frames the question on appeal—whether substantial evidence supports "the IJ's finding that [Pereira] can safely and reasonably relocate to Guatemala." That is not the relevant inquiry.  The question is whether Pereira has a well-founded fear of future persecution *on account of a protected ground*. 8 C.F.R. § 1208.13(b)(2)(i). The record indicates that Pereira may face continued threats and violence upon return to Guatemala.  But so long as those threats are not based on a protected status, they do not support her claim for asylum. *Vakeesan v. Holder*, 343 F. App'x 117, 127 (6th Cir. 2009) ("[B]y finding that Vakeesan's evidence demonstrates only 'generalized civil strife' in Sri Lanka resulting

---

[1] In fact, the IJ erred in Pereira's favor by applying too generous a standard to Pereira's claim.  The IJ concluded that Pereira was entitled to a presumption of a credible fear of future persecution because she had experienced past persecution.  The BIA provided the following correction:

> [T]he Immigration Judge's finding of past persecution, based on the requisite level of harm alone but not on account of a protected ground, was an erroneous conclusion that inured to the benefit of [Pereira].  For past persecution to be established, the harm suffered must be on account of a protected ground.  [Pereira] should not have been given the benefit of a presumption of future persecution.

from the civil war, the [Board] necessarily found that Vakeesan's evidence does not demonstrate a pattern or practice of persecution of innocent Tamils in Sri Lanka."). The question here is whether the record "compels" us to find that Pereira has a well-founded fear that she will suffer future persecution on a protected ground upon her return to Guatemala. We find that it does not.

First, much of the evidence Pereira cites in support of her argument concerns her ongoing fears stemming from her past experience of violence at the hands of gangs in Guatemala. But the IJ and the BIA both found that the violence Pereira experienced was not on account of a protected ground, but instead amounted to generalized gang violence. We find that substantial evidence supports that determination. The IJ relied on Pereira's testimony in concluding that Pereira was targeted, not because of her membership in a protected social group, but rather because the gang members "wanted to touch her inappropriately and humiliate her, and . . . because they wanted her jewelry." Pereira argues that her testimony also indicated that she was targeted because of her indigenous status. But Pereira does not dispute the testimony that the IJ relied on. A factual finding by the IJ, affirmed by the BIA, that is based on testimony that cuts in both directions, is not a finding that we can disturb under the substantial-evidence standard. Because we find that substantial evidence supports the IJ's conclusion that Pereira's past persecution was not on the basis of a protected ground, her use of that past violence as evidence of a well-founded fear of future persecution is not persuasive.

Second, Pereira argues that the IJ selectively cited a 2015 Human Rights Report prepared by the State Department concerning Guatemala, for the fact that "the Office of the Ombudsman for Indigenous Women coordinated and promoted action by government institutions and NGOs to prevent violence and discrimination against indigenous women," whereas this statement neglected to mention that the Report also says that the Office of the Ombudsman "lacked the human

resources and logistical capacity to perform its functions on a national level." But the IJ specifically acknowledged that "a lack of resources limit[s] the Guatemalan government's ability to reach all areas." The IJ did not cite the Report selectively.

Third, Pereira argues that the IJ did not give proper weight to the testimony in the record indicating that she will face violence if she returns to Guatemala. The testimony Pereira cites does not compel the conclusion that she has a well-founded fear of future persecution. According to Jeremias Galica, Pereira's former brother-in-law, for instance, Pereira would face gang violence regardless of where she moved in Guatemala because "she stands out as indigenous due to her short height and marked indigenous features." But the fact that Pereira is indigenous—like 44% of the Guatemalan population, according to the 2015 State Department Report—begs the question of whether she would suffer persecution on that basis. The testimony of Moises Marroquin, Pereira's former father-in-law, rests on the violence Pereira suffered in the past, which the IJ reasonably determined was not centrally motivated by Pereira's belonging to any protected social group. Lastly, the expert testimony of Linda Green is similarly based on the premise that the past violence Pereira suffered at the hands of the gangs was on account of her status as an indigenous female who is the head of her household. As with Moises Marroquin, the IJ reasonably rejected that notion when it found that the violence Pereira suffered was generalized gang violence.[2]

---

[2] Pereira argues, based on the same "nexus" argument and substantial evidence challenge, that the BIA and IJ erroneously held that she was not entitled to withholding of removal. Having rejected those arguments above, we reject her withholding of removal claim for the same reasons. *See Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004) ("Because the lesser standard for establishing asylum eludes [the petitioner], we conclude that she cannot meet the more stringent requirements for withholding of removal.").

Pereira also claims that the BIA failed to address her argument that the IJ's conclusion regarding her well-founded fear of future persecution was not supported by substantial evidence and therefore the panel "should vacate the BIA's decision and remand for further consideration." But the BIA simply declined to address Pereira's alternate bases for relief once it had found that the IJ did not clearly err in finding that Pereira had failed to show that "a protected ground was at least one central reason for her persecution or fear of future persecution." Because we affirm the BIA's decision in that respect, no remand or reconsideration is necessary.

**B.**

To obtain relief under the CAT, Pereira bears the burden of showing that "it is more likely than not that . . . she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Pereira must show that she would be tortured with the "consent or acquiescence of a public official." 8 C.F.R. § 208.18(a)(1). Acquiescence by a public official includes instances of "willful blindness." *Amir v. Gonzales*, 467 F.3d 921, 927 (6th Cir. 2006). Pereira claims that the BIA and the IJ failed to apply the "willful blindness" standard to her CAT claim, but instead required her to show "that the Guatemalan government had played or would play a direct role in her torture."

In fact, the IJ's opinion quoted *Amir*, 467 F.3d at 927, and explicitly articulated the willful-blindness standard, explaining that "[a]cquiescence includes the 'willful blindness of the public official to the activity,'" while noting that "[a] government's inability to control private parties does not equate to willful blindness." *See Ali v. Reno*, 237 F.3d 591, 597-98 (6th Cir. 2001)). And the IJ found facts that were inconsistent with willful blindness, namely that "the country reports demonstrate that the government of Guatemala has committed resources to fight against the violence that plagues the country and more specifically to help indigenous women."

Pereira's complaint amounts to the fact that the IJ did not specifically recite the willful blindness standard while discussing the facts of her case. To be sure, Pereira is not wrong that the IJ could have used more precise language in that section. But the fact that the IJ both articulated the correct standard and then explained its decision in manner consistent with that standard assures us that it did not necessarily evaluate her claim under the wrong standard.

**III.**

We **DENY** the petition for review.

**BERNICE BOUIE DONALD, Circuit Judge, dissenting in part.** I concur as to the majority's analysis of Pereira's asylum claim. However, because I believe the record establishes clearly that neither the IJ nor the BIA applied the willful blindness standard to Pereira's CAT claim, I respectfully dissent with respect to this issue.

We have held that acquiescence under the CAT analysis does not require that the government itself be responsible for the torture, nor does it require that the government willfully accept torturous activities by private citizens. *See Amir v. Gonzales*, 467 F.3d 921, 927 (6th Cir. 2006) (rejecting the willful acceptance standard); *see also Grijalva v. Gonzales*, 212 F. App'x 541, 550–51 (6th Cir. 2007) (observing that the government need not be responsible for the persecution under the CAT analysis). Instead, we have repeatedly emphasized that the government's "willful blindness" to torturous acts is all that is needed to establish acquiescence under the CAT analysis. *See id.* at 551–52 (recognizing that "'willful blindness' falls within the definition of 'acquiescence'"); *see also Nerghes v. Mukasey*, 274 F. App'x 417, 424 (6th Cir. 2008). Although the specific words "willful blindness" need not be mechanically recited in every case, reference to "the erroneous 'willful acceptance' standard" could be indicative of the wrong legal standard. *Nerghes*, 274 F. App'x at 425.

The majority, recognizing that "Pereira is not wrong that the IJ could have used more precise language," concludes that the IJ did not err because it "explicitly articulated the willful blindness standard." Maj. Op. at 9. But articulating the correct legal standard and *applying* it are vastly different. The record establishes that the IJ applied the wrong standard. After finding Pereira's testimony credible that the Guatemalan government refused to protect Indigenous women from gang violence, the IJ stated Pereira "ha[d] not shown that the Guatemalan government will seek to torture her specifically, or will willfully accept the torturous conduct of private actors."

The IJ's explicit use of the words "willful[] accept[ance]" signals that it applied the wrong standard to Pereira's CAT claim. *See Nerghes*, 274 F. App'x at 425. However, the IJ did not stop there. Rather, the IJ went further: "[Pereira] presented no evidence that she has ever been arrested, detained, or abused by Guatemalan officials, and she did not allege that she would be harmed by any Guatemalan officials in the future." The IJ's explicit mention of willful acceptance, in conjunction with its recurrent references to Pereira's failure to show that she would suffer harm at the hand of Guatemalan officials, is "patently inconsistent with the willful blindness standard." *Nerghes*, 274 F. App'x at 424 (citation omitted).

The majority further notes that because the IJ "found facts that were inconsistent with willful blindness, namely that 'the country reports demonstrate that the government of Guatemala has committed resources to fight against the violence that plagues the country and specifically to help indigenous women,'" the IJ necessarily applied the correct legal standard. Maj. Op. at 10. I disagree. The IJ's single reference to a fact that could be relevant to an application of willful blindness does little to offset its clear reference to, and unequivocal application of, an erroneous legal standard that permeates its opinion.

The BIA seemingly acknowledged the IJ's misapplication of the CAT standard, noting that "irrespective of whether [the IJ] applied the correct willful blindness standard, the [IJ] did not clearly err." The BIA, however, compounded the IJ's error by applying its own erroneous legal standard to Pereira's CAT claim. According to the BIA:

> the Immigration Judge did not clearly err in finding insufficient evidence that the Guatemalan government would seek to torture [Pereira] since there was no evidence of past torture[.]

Although, like the IJ, the BIA also referenced evidence that the Guatemalan government has "committed resources to fight against violence against Indigenous woman," it did so in support of

its conclusion that there was "insufficient evidence that the Guatemalan government would seek to torture [Pereira]"—a requirement that we have repeatedly rejected.

Because "BIA review under an incorrect standard of review implicates [Pereira's] due process rights," I believe we must remand this case to the BIA to consider Pereira's CAT claim under the proper willful blindness standard. *Tran v. Gonzales*, 447 F.3d 937, 944 (6th Cir. 2006); *see also Grijalva*, 212 F. App'x at 551–52 (vacating and remanding a BIA decision that failed to consider whether officials were "willful[ly] blind[]" to torture by private actors). I dissent.